**Kirkland Lamar WARREN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–99–00063–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 17, 2000.

Decided Feb. 18, 2000.

Paul David Houston, Henderson, for appellant.

Kyle Freeman, County Atty., Bill Saban, Asst. County Atty., Henderson, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Chief Justice CORNELIUS.

A jury convicted Kirkland Lamar Warren of the second degree felony of delivery of one gram or more but less than four grams of cocaine, by actual delivery.[1] Warren's punishment, enhanced by a prior felony conviction, was set by the jury at fifty years' imprisonment. In a single point of error, Warren contends that the State's evidence was insufficient to prove actual delivery as alleged in the indictment and, therefore, the trial court erred in failing to grant his motion for instructed verdict. We affirm the conviction.

At the time of the events underlying this appeal, Cynthia Barefield was a private citizen working with the Northeast Texas Narcotics Task Force as an informant, arranging drug buys between undercover officers and suspected drug dealers. On June 8, 1998, Barefield arranged a drug buy between Officer Paul Jaworski of the Task Force and Warren at the motel where Barefield lived in Rusk County. Warren arrived at the motel first,[2] followed by Jaworski, who arrived about ten minutes later. Barefield introduced the two men, and Jaworski asked Warren, "Do you have something for me?" Warren answered, "Yes, it's in the bathroom on top of the toilet." Barefield testified that Warren placed the cocaine in the bathroom because there were police cars and police officers in the motel parking lot, and this made him nervous. Jaworski went into the bathroom and found wrapped in plastic what was later determined to be crack cocaine. He picked it up and returned with it to the bedroom. Warren and Jaworski briefly argued over the price of the cocaine, then Jaworski paid Warren $200.00 and left the motel room, followed by Warren minutes later.

Warren contends that the State's evidence was sufficient to prove constructive delivery, but insufficient to prove actual delivery as alleged in the indictment. He contends that actual delivery requires that the seller physically hand over possession of the controlled substance to the buyer. He relies on *Queen v. State*, 662 S.W.2d 338 (Tex.Crim.App.1983), in which the Court of Criminal Appeals said that constructive delivery included a situation where the seller "plac[es] the contraband in a particular location and then advise[s] the recipient of this location so that the

---

1. The offense is a violation of TEX. HEALTH & SAFETY CODE ANN. § 481.113(a), (c) (Vernon Supp.2000).

2. Warren arrived with one other male who never entered the motel room, but who apparently waited for Warren outside the motel room around the corner.

recipient can retrieve the narcotics." *Queen v. State*, 662 S.W.2d at 340. Because the evidence showed that Warren did not physically hand over the cocaine to Jaworski, but directed Jaworski to retrieve it from the bathroom where he had previously placed it, Warren contends he could have been convicted of constructive, but not actual, delivery of cocaine.

■ A challenge to the trial court's denial of a motion for instructed verdict is, in effect, a challenge to the legal sufficiency of the evidence to support the conviction. *Nam Hoai Le v. State*, 963 S.W.2d 838 (Tex.App.-Corpus Christi 1998, pet. ref'd). In considering such a challenge, we consider all the evidence, both from the State and the defense, in the light most favorable to the verdict. *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990). We consider the evidence to determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If any rational trier of fact could so find, the evidence is sufficient and we will affirm the conviction.

■ Pursuant to Section 481.113(a) of the Texas Health and Safety Code, a person commits a felony offense who knowingly or intentionally "delivers" a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.113(a). Delivery of a controlled substance may be accomplished in one of three ways: by actual transfer, constructive transfer, or an offer to sell. *Ferguson v. State*, 622 S.W.2d 846, 848 (Tex.Crim.App. [Panel Op.] 1980) (citing TEX.REV.CIV. STAT. ANN. art. 4476–15, § 1.02(8)). So that the accused may know the precise nature of the accusation against him, the State must specify in the indictment the kinds of delivery it will try to prove. *Id.* Here, although the State could have alleged all manners of delivery, *State v. Garrett*, 798 S.W.2d 311, 314 (Tex. App.-Houston [1st Dist.] 1990), *aff'd*, 824 S.W.2d 181 (Tex.Crim.App.1992), it alleged only that Warren delivered the cocaine by actual transfer. Thus, the State was bound to prove beyond a reasonable doubt that Warren delivered the cocaine by actual transfer. *Conaway v. State*, 738 S.W.2d 692, 694 (Tex.Crim.App.1987).

The sole issue for our determination is whether the evidence supports a finding that Warren delivered the contraband by actual transfer. In making this determination, Warren's argument that the State proved constructive rather than actual transfer requires that we distinguish these types of delivery. The Texas Controlled Substances Act does not define the terms "actual transfer" and "constructive transfer." Accordingly, Texas courts have construed the terms according to their plain or common meanings. *See, e.g., Nevarez v. State*, 767 S.W.2d 766, 768 (Tex.Crim. App.1989); *Conaway v. State*, 738 S.W.2d at 695. Actual delivery of a controlled substance has been defined as a complete transfer of the real possession and control of the substance from one person to another. *Conaway v. State*, 738 S.W.2d at 695. As commonly understood, an actual transfer, or delivery contemplates the manual transfer of property from the transferor to the transferee or to the transferee's agents or to someone identified in law with the transferee. *Heberling v. State*, 834 S.W.2d 350, 354 (Tex.Crim.App.1992); *Cohea v. State*, 845 S.W.2d 448, 450 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). Constructive delivery, on the other hand, has been defined as a transfer of a controlled substance, either belonging to an accused or under his control, by some other person or agency, at the instance and direction of the accused. *Thomas v. State*, 832 S.W.2d 47, 51 (Tex.Crim.App.1992); *Roberts v. State*, 866 S.W.2d 773, 778 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). In *Queen*, the case on which Warren relies, the Court of Criminal Appeals cited *Rasmussen v. State*, 608 S.W.2d 205 (Tex. Crim.App. [Panel Op.] 1980), where the court for the first time addressed what constitutes a constructive transfer. *See*

*Queen v. State*, 662 S.W.2d at 340–41 (citing *Rasmussen v. State*, 608 S.W.2d at 210). In *Rasmussen*, the court consulted other jurisdictions that had adopted statutes from the Uniform Controlled Substances Act and cited *State v. Guyott*, 195 Neb. 593, 239 N.W.2d 781 (1976), as illustrative of a constructive transfer. *See Rasmussen v. State*, 608 S.W.2d at 209–10. In *Guyott*, the Nebraska Supreme Court held that a constructive transfer occurred when the transferor placed narcotics in a wastebasket in a hotel bathroom where an undercover officer later retrieved them before returning to meet the transferor in the hotel lounge. *See Rasmussen v. State*, 608 S.W.2d at 209–10 (citing *State v. Guyott*, 239 N.W.2d at 782). Thus, in *Queen*, the court stated in dictum,

> A constructive transfer may take several forms: the actor may constructively transfer the narcotics to the intended recipient by entrusting the narcotics to an associate or the postal service for the delivery to the recipient, *or the actor may place the contraband in a particular location and then advise the recipient of this location so that the recipient can retrieve the narcotics.*

*Queen v. State*, 662 S.W.2d at 340 (emphasis added) (citing *Rasmussen v. State*, 608 S.W.2d at 210). Warren contends that the situation mentioned in *Queen* is the situation his case presents. He placed the contraband in a particular location-the motel bathroom-then advised Jaworski of the location so that Jaworski could retrieve the narcotics.

Warren also relies on *Elliott v. State*, 766 S.W.2d 361 (Tex.App.-Texarkana 1989, pet. ref'd), in which this Court cited *Daniels v. State*, 754 S.W.2d 214 (Tex.Crim. App.1988), where the Court of Criminal Appeals noted that "[f]or some purposes, delivery is accomplished by nothing more than making a thing available for another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another." We determined that the court referred to constructive transfers. We cited *Queen* and held that the evidence supported a constructive transfer where the seller placed the controlled substance on the front porch and directed the buyer to pick it up from the porch. However, in *Elliott*, there was no issue of whether the transfer constituted an actual transfer.

In *Nevarez*, the Court of Criminal Appeals again noted that "[f]or some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another." *Nevarez v. State*, 767 S.W.2d at 768. To the extent that *Queen*'s definition of constructive delivery contemplates such a situation, *Queen*'s definition is no longer effective. In *Nevarez*, the court suggested that the definition it used applied to the facts of the case before it, which the court determined constituted an actual delivery. *Nevarez v. State*, 767 S.W.2d at 768; *see also Rodriguez v. State*, 970 S.W.2d 66, 69 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *Valladares v. State*, 800 S.W.2d 274 (Tex.App.-Texarkana 1990, pet. ref'd).

In 1990, in *Valladares*, this Court expressed its dissatisfaction with *Queen*'s understanding of actual and constructive transfer. We stated that the seller may effect an actual transfer by transferring the controlled substance to a particular location, such as the buyer's house, boat, or locker, and making it available to the buyer at that location. The Court of Criminal Appeals refused a petition for review of our decision in *Valladares*.

In *Stolz v. State*, 962 S.W.2d 81 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd), the Houston Court of Appeals addressed *Queen* and held that subsequent dictum in *Daniels v. State*, 754 S.W.2d at 221, had neutralized *Queen*'s impact. *In Stolz*, the seller effected an actual transfer where the buyer placed money under a rock on a fence post outside the seller's workplace, then waited a short distance away while

the seller left his workplace and exchanged the money for a bag of marihuana.

■ Contrary to Warren's position, an actual transfer does *not* require that the seller manually place the contraband in the hands of the buyer. *See Rodriguez v. State,* 970 S.W.2d at 69–70; *Wartel v. State,* 830 S.W.2d 757 (Tex.App.-Houston [1st Dist.] 1992, no pet.); *Heath v. State,* 778 S.W.2d 208 (Tex.App.-Fort Worth 1989), *rev'd on other grounds,* 817 S.W.2d 335 (Tex.Crim.App.1991); *Endsley v. State,* 702 S.W.2d 307 (Tex.App.-Houston [1st Dist.] 1985, pet. ref'd). In *Wartel,* even though the seller did not pick up the contraband and hand it to the buyer, the seller effected an actual transfer because he controlled the transaction. *See Wartel v. State,* 830 S.W.2d at 760–61. The evidence in *Wartel* established that the seller was present in the room where the cocaine was located, he could see the cocaine in plain view, he responded to the buyer's request for drugs by directing him to the pebbles or rocks of cocaine on the table, and he exchanged money with the buyer for one of the rocks. *See id.* Similarly, in *Rodriguez,* the seller effected an actual delivery by doing nothing more than making the cocaine available to the buyer. *See Rodriguez v. State,* 970 S.W.2d at 69. Even though the seller did not hand over the cocaine to the buyer, the seller who was standing guard was in control of the transaction, directing the buyer to a shoe box under a jacket, where the cocaine was located. *See id.* In *Endsley,* an actual transfer occurred when the seller took several bills from the buyer and then, approximately ten minutes later, set contraband on the picnic table where the buyer had gone to sit down. *See Endsley v. State,* 702 S.W.2d at 308. In *Heath,* an actual transfer occurred when the seller placed separate pieces of contraband on the ground between himself and the buyer and instructed the buyer to choose from among them. *See Heath v. State,* 778 S.W.2d at 210–11. The *Heath* court stated, "The mere fact that the substance in Heath's

possession was momentarily on the ground does not negate the fact that it went directly from Heath to [the buyer]." *Id.* at 211.

In the cases we mentioned, the seller placed the contraband in the immediate vicinity and within the immediate reach of the buyer, who promptly seized the contraband in the seller's presence. Warren, rather than placing the cocaine directly in front of Jaworski, placed it farther away in a nearby room, a "particular location," where it sat for several minutes before Jaworski took possession of it.

The mere fact that Warren placed the cocaine in another room does not mean that Warren did not actually transfer the cocaine to Jaworski. Warren did not use a means other than himself, such as the postal service, to deliver the cocaine. Nor did he deliver the cocaine through a third person, not an agent of the transferee. Having reviewed the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to support the jury's finding that Warren delivered the cocaine by actual transfer. Accordingly, we affirm the conviction.

Dissenting Opinion by Justice GRANT.

BEN Z. GRANT, Justice, dissenting.

The high court in this state for criminal matters has held that a defendant is entitled to know the type of transfer with which he or she is charged. The high court has also held that a constructive transfer may take the form of the actor placing the contraband in a particular location and then advising the recipient of this location so that the recipient can retrieve the narcotics. *Queen v. State,* 662 S.W.2d 338, 340 (Tex.Crim.App.1983). That is what happened in this case, and I am bound to follow the precedent established by the Texas Court of Criminal Appeals.

The majority opinion says that the Court of Criminal Appeals changed this definition in the application to the facts in *Nevarez v. State,* 767 S.W.2d 766, 768 (Tex. Crim.App.1989). In *Nevarez,* testimony indicated that the appellant's codefendant

slid the bag containing the marihuana over to the officer. This case does not change the precedent set in the *Queen* case.

In *Rodriguez v. State*, 970 S.W.2d 66 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd), cited by the majority, the court said, "Even though appellant did not pick up the shoe box and hand it to DeBlanc, appellant was in control of the transaction (standing guard), and effected the transfer by telling DeBlanc 'it' was in the shoe box." *Id.* at 69. The parties to the transactions were in the same room, and the situation suggests that the shoe box was within reach of the recipient. This evidence would support an actual transfer.

If the present case is determined to be actual delivery, then the guidelines are further muddled between what is actual delivery and constructive delivery, and prosecuting attorneys preparing an indictment have no guidelines left to follow.

Precedent is established by the *ratio decidendi* of the case, not the dicta. Having said that, I would add that not even the dicta in *Nevarez* could be read to control in the present case. It is a reach to find that this fact situation is an actual transfer instead of a constructive transfer.

The majority opinion stretches the meaning of the term "within his reach." This term would encompass something laid on a table in lieu of handing it to the recipient, or any way that it is made available to another by placing it within the actual reach of where that party is sitting or standing.

It was said that Rob Roy MacGregor had the longest arms of any man in Scotland, but even he could not have reached from one room in the building to another to obtain the contraband. It was out of reach. Thus, this case should be construed to be one in which the actor places the contraband in a particular location and then advises the recipient of this location so that the recipient can retrieve the narcotics. This, according to the Court of

Criminal Appeals, is a constructive transfer.

If the Court of Criminal Appeals wants to change the definition of constructive delivery, this would be an excellent case to review to establish clear guidelines of the difference between these two types of deliveries.

I respectfully dissent.